Good morning, your honors. My name is Michelle Mailey. I am pro bono counsel for petitioners Adonis Calderon, his wife Jessica, and their son. I'm also here with my co-counsel, Crystal Martinez. I'd like to reserve two minutes for rebuttal. Counsel, please be reminded that the time shown on the clock is your total time remaining. Thank you, your honor. And before I get into things, I just wanted to thank the court for reinstating argument today. The family really appreciates the opportunity to talk about the issues in their case, and I personally appreciate the professional opportunity. And we thank you for taking the case pro bono. Thank you. I want to start by highlighting a fact that nobody in this case disputes. The government doesn't dispute it. The agency doesn't dispute it. And that's the fact that the family is related to a young man named Orlando Perez, who was murdered by the Nicaraguan paramilitary for protesting. That fact has been well documented by multiple news reports, as has the fact that family members of Orlando have been routinely stalked, harassed, and assaulted by the Nicaraguan government ever since. And counsel, I'll take all that as being true. Yes. But as you well know, under Singh v. Gonzalez, one of our presidents, when we look at whether there is substantial evidence to back up the IJ and BIA's determination of adverse credibility, if there's any one finding of adverse credibility, that's enough. And in this case, you've got inconsistency in testimony, poor demeanor, and lack of corroborative evidence. Do you contend that each of these bases was unsupported by substantial evidence? Your Honor, yes, I would. And I wanted to get into the standard. I would like to turn the Court's attention to the Kumar case that we cited in our brief. There, I believe it was Judge McKeown explained that a recent case decided by this that it's no longer the case, that as long as there's a single factor supporting the adverse credibility determination. With respect, you're talking about a three-judge panel interpreting another three-judge panel, right? Yes, Your Honor. And a three-judge panel can't overrule another three-judge panel. Only an en banc court can do that. So are you saying that what our colleague said in the case that you just cited is enough to change the ruling in Singh v. Gonzalez? That's what the most recent precedent says, Your Honor. But again, you understand my point? Yes. Singh v. Gonzalez says that if you have a number of different bases to find adverse credibility, that if any one of them is adequate, is supported by substantial evidence, that's enough. No three-judge panel can overturn that. An en banc panel can't. So my question to you is, are we not bound as a panel by Singh v. Gonzalez? I think the answer to that is no, Your Honor. But I would submit that regardless, let's take for granted that we are, the result should be the same in this case. When you look, and I'm glad that you asked because I do want to address the adverse credibility determination. The agency did set forth that there were multiple bases for that determination. But I would submit that when you look at the testimony, a lot of that really falls apart very quickly. But counsel, do we get to do that? We don't get to second-guess the credibility. We have to determine whether or not that decision that was made is supported by substantial evidence. So if it could go either way, you lose. Your Honor, it's correct that that determination is entitled to deference. But an adverse credibility determination does not insulate the agency's decision from, you know, the possibility of review and remand, which I would submit is the proper outcome. But as my colleague has indicated, and as we discussed a minute ago, you have the burden to show that all of these, in this case, three different bases for adverse credibility, that none is supported by substantial evidence. That's your burden. And as my colleague pointed out, if that doesn't happen, your client loses. So what's your response to that? Two responses, Your Honor. First is that I would submit the adverse credibility determination is not supported by substantial evidence. Okay, and then why? Just give us some specific why. Yes. I would love to do that. There are a few examples here. So for instance, we heard a lot about the family's move, moves, and I use both of those terms on purpose, throughout Nicaragua, as a key basis for the adverse credibility determination. I think the agency really made a mistake here. If you look at the board's order with respect to the moves, they seem to have been under the impression that there was a single move and that the family gave multiple inconsistent dates as to when that move occurred. That's incorrect. Well, let's say you're correct, just because we have a little time here.  Let's say you're correct about that. We still have poor demeanor and lack of corroborative evidence. What's your response to those? I would disagree with the notion of that there was a lack of corroborating evidence, and this leads to another problem that we have with the agency's decision. Well, what was the corroborating evidence? The corroborating evidence that I have in mind, Your Honor, there was a lot in the record, but let me start with what I think is the most important, which are a number of media articles that explain that Orlando, the cousin of the family, was murdered by the Nicaraguan government. But that wasn't the basis for the adverse credibility determination, whether or not he was murdered. And that's true, and that's actually a big problem, Your Honor, because the family's relationship with Orlando was its own theory of this case, separate and apart from Adonis's, the lead petitioner's, political activity. And the agency didn't consider that theory, the relationship to Orlando. And that's very significant, because getting back to the evidence, it shows not only the news reports establish not only that Orlando was murdered by the Nicaraguan paramilitary for protesting, but also that multiple family members of Orlando have been persecuted, have been stalked, harassed, and driven from Nicaragua to escape. None of that was considered at any point by the agency. The immigration judge didn't consider it. The board didn't consider it. But, Counselor, if the adverse credibility determination is dispositive, why would that be reversible that they didn't consider those? If the adverse credibility determination stands, then it doesn't matter if they considered those. I would say there are two reasons why the adverse credibility determination, in fact, is not dispositive. And the first is that there were legal errors here that require remand and reversal, regardless of the adverse credibility determination. What errors? The court — excuse me — the agency did not consider at least two of my client's  That's the future persecution claim. The board mentioned the fact that they brought it, but didn't consider that claim at all. I thought they found that they didn't establish a subjective fear of future persecution. I didn't see that anywhere in the record, Your Honor. And I think it's important to take note of that, that in the board's orders of — Well, let's say, arguendo, that they did. Doesn't that undercut your argument? Well, it's a little difficult to respond to that because we have a lot of arguments here, but the key one I'm responding to is that the board didn't consider that claim at all or the torture claim. And I'll just wrap up here so I can leave a little bit of time for rebuttal, if I may. They didn't consider two particular social groups underlying the asylum claims, as well as the evidence that I mentioned. So I'll go ahead and pause there for now and come back for additional discussion. Thank you, Counsel. Thank you. We'll hear from the government. Counsel? Good morning, Your Honors. I'm just waiting for the clock. Good morning. May it please the Court, Christopher Giger for the Attorney General. Your Honors, I have two points. First, regarding adverse credibility, and second, regarding the petitioner's cat claims. Your Honors, the petitioners in this case were provided ample opportunity to testify credibly, consistently, and to explain any discrepancy between their testimony and the record evidence. The immigration judge did not sequester the petitioners when they testified, and the immigration judge provided a 30-minute recess in order for the petitioners to regroup, collect their evidence, consistently, and to explain any discrepancies. They didn't do so. And I want to point out, Your Honors, that before this Court, the petitioners have argued extensively that many of the inconsistencies the agency relied on don't exist, that when you look at the record, there aren't actually inconsistencies. But as seen on page 20 and 24, 22-24 of the record, the petitioners never argued that before the agency. They only argued that the inconsistencies that the agency relied on were minor, or that they didn't go to the heart of the claim, and that the agency relied too much on a lack of supporting evidence. And so there is a big difference between arguing an inconsistency is minor as opposed to an inconsistency doesn't exist at all. Ultimately, Your Honor, the agency provided specific, cogent reasons for the agency's Our brief goes through in detail why each inconsistency is supported by substantial evidence. And unless the Court has any specific questions regarding the particular inconsistencies, we will rely on our brief to that portion. Counsel, let me ask you this. In our Camalthus v. INS case from 2001, we held that the BIA can't deny CAT based on credibility determination that basically doomed asylum. Isn't that what the BIA did here? No, Your Honor. I think there's an important distinction between the case here and Camalthus, and that being that in Camalthus, this Court noted that the adverse credibility finding did not relate whatsoever to the petitioner's claim for CAT protection. In Camalthus, that regarded a Tamil male, and he asserted that as a Tamil male, or as a man, he would face a future risk of torture if removed. And his adverse credibility finding, on the other hand, was the IJ found that he had a wooden manner of speech, and that the IJ, the immigration judge, had heard, he alleged he had heard that exact claim before. And so that's very different than the case we have here, where the petitioner's statements that the Board found to not be credible are tied, are inexplicably intertwined with their claim for CAT protection. On pages 25 to 28 of the record, the petitioners assert that they have a risk of future torture because of the fact that they'd be perceived as political opponents, specifically because of their relation to their cousin, and the events that occurred in Nicaragua, specifically attending the march, attending their cousin's funeral where pictures were taken, and going to their cousin's grave site where they alleged that paramilitary approached. And so these are all statements that the Board determined were not credible, and it's also the basis for the petitioner's CAT claim. And so that's how, ultimately, how this case is distinguishable from CalMathis, and also from Guam versus Barr, which the petitioners do rely on and cite to in their reply brief. And counsel, I'm sorry. Go ahead. Didn't the IJ go ahead to talk about the country conditions evidence in the context of the CAT claim? That's correct, Your Honor. In this case, the IJ did talk about the country conditions, and in Guam versus Barr, that was actually a point that this court made that neither the Board or the IJ in Guam versus Barr had discussed the country conditions, where here the IJ expressly did, and then the Board noted it cited Singh versus Lynch and Yali Wang for the proposition that when a petitioner's claims under the CAT are based under the same statements that the Board determined to be not credible in the asylum context, it's proper for the agency to rely on the adverse credibility finding for both asylum and CAT. And so, ultimately, that's what happened here. Because the petitioner's claim for CAT protection is based on the same statements that the Board determined to not be credible, which the adverse credibility is supported by substantial evidence, the Board acted properly in denying both asylum, withholding of removal, and protection under the CAT. And if the court does not have any further questions, we respectfully ask the court to deny the petition for review. Thank you, Counsel. It appears there are no additional questions. Rebuttal? Thank you. Yes, Your Honor. Just a few responses here. One thing that I think is really notable about the government's argument just now is that at no point did I hear them talk about the claims that the agency did not consider. Again, there's no dispute on that, that there was no determination on future persecution specifically. There was no determination on behalf of the Board or engagement with the Board at all on the torture claim. Counsel, I, again, maybe I misread the record, but I thought they did consider future persecution. Respectfully, Your Honor, I'm just taking a look at the order. That's not how I read it. Maybe it would be worth just, you know, taking a second look. But that was missing from the Board's analysis completely, and I would submit from the IJ's analysis as well in the oral decision. But you also have the separate issue, which is the theory of relief premised on the family's relationship to Orlando. That wasn't discussed at all. That wasn't covered by the adverse credibility determination because it wasn't discussed before the immigration judge. These things have been left untouched by the agency, and it's really important that the family gets an opportunity. Both the IJ and the BIA? That's right, Your Honor. And just one last thing on exhaustion. The government submits that we've... I'm really surprised. I mean, the whole thing about Orlando was ostensibly discussed, was it not? Yes, Your Honor. May I? I went past my time, but I want to respond. You can answer, yeah. Yes. The immigration judge did ask about Orlando, but only to the extent that he was trying to determine whether Adonis had participated in any political conduct. He didn't explore whether there was a basis for relief based on the fact that the family is related to Orlando and that the Nicaraguan government has targeted family members of Orlando since his death. All right. Thank you, counsel. Thank you very much. Thank you to both counsel. And once again, thank you for arguing this case pro bono. Thank you, Your Honor. The case just argued is submitted for decision by the court.
judges: TASHIMA, RAWLINSON, SMITH